**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------X
Kevin Montoya, et al.,                         :
                                               :
      Plaintiffs,          :         05 Civ. 2313 (HB)
                                               :
      -against-            :         **OPINION & ORDER**
                                               :
Mamma.Com Inc., et al.,                        :
                                               :
      Defendants.          :
-----------------------------------------------------X

**Hon. Harold Baer, Jr., District Judge:**

      Plaintiffs bring this action for violations of sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") on behalf of a putative class of investors in Mamma.Com, Inc. ("Mamma.Com"), a publicly traded Canadian corporation. Defendants Mamma.Com, David Goldman ("Goldman"), Guy Fauré ("Fauré"), and Daniel Bertrand ("Bertrand") (collectively "defendants") move to dismiss the complaint on the grounds that plaintiffs: 1) fail to plead fraud with adequate particularity; 2) fail to adequately allege scienter; and 3) fail to plead loss causation. For the following reasons, defendants' motion to dismiss is DENIED.

## I. BACKGROUND

      Mamma.Com, an Ontario corporation with its principal place of business in Montreal, was primarily engaged in operating an internet search engine named Mamma.com. (Compl. ¶ 18).[1] Plaintiffs bring this action on behalf of a class of individuals who purchased Mamma.Com stock on the open market between March 2, 2004 and February 16, 2005. (Compl. ¶ 32). Plaintiffs allege that, throughout this period, Mamma.Com was "secretly controlled, influenced and/or owned by Irving Kott . . ." (Compl. ¶ 3). Plaintiffs claim that Kott, who is also a named defendant in this action,[2] is a "notorious Canadian stock swindler with a long history of criminal activity and stock

---
[1] Citations to "Compl." refer to the Consolidated Amended Class Action Complaint dated July 29, 2005.
[2] Kott answered the Complaint on November 21, 2005. He has not joined in this motion to dismiss.

1

fraud." (Compl. ¶¶ 3, 43-46).[3] Plaintiffs claim that defendants, in numerous SEC filings and press releases issued before and during the class period, failed to disclose Kott's involvement with Mamma.Com, a fact that would have materially impacted the share price.

### A. Plaintiffs' Allegations

In support of their allegation of control by Kott, plaintiffs principally rely on press reports and statements by various confidential sources. Many of these sources refer to Kott's control over Intasys Corporation ("Intasys"), a predecessor of Mamma.Com (plaintiffs allege that Intasys changed its name to Mamma.Com on January 6, 2004). (Compl. ¶ 38). Specifically, plaintiffs cite a March 29, 2005 article published by Dow Jones, which quoted unnamed former Intasys executives as stating that Kott "'ran the shares and . . . ran the financing behind the corporate stuff'" and that "'the word'" was that Kott was "'the Godfather.'" (Compl. ¶¶ 47-48).

The Dow Jones article also recounted the experience of an outside executive, Fazel Naghshineh, who had attempted to sell his business to Intasys in 1999. (Compl. ¶ 49). According to Naghshineh, Kott "lead the negotiations on behalf of Intasys." (Id.) In an April 12, 2005 article in the *National Post*, Naghshineh stated that he was told Kott "'was the main financier, the man with the money.'" (Compl. ¶ 50).[4] In addition, plaintiffs cite a confidential source, "CS-1," who also attempted to sell his business to Intasys. That source alleges that he was told by Sami Shamma, then President and CEO of Intasys, that he "'would have to meet with Kott [to do a deal] because [Kott] called the shots.'" (Compl. ¶ 51). Another confidential source, "CS-6," who also negotiated to sell a company to Intasys, met with Kott and was told that Kott "'controlled everything.'" (Compl. ¶ 52).[5] Both confidential sources actually negotiated with Kott directly. (Compl. ¶¶ 51-52).

---

[3] Plaintiffs allege that Kott first plead guilty to stock fraud in Ontario in 1976, paid $4 million dollars to settle an action brought by Dutch regulators in 1990, and plead guilty in 2004 to charges arising from a separate SEC investigation. (Compl. ¶¶ 43-46).

[4] Plaintiffs also cite a confidential source, "CS-6," who worked for Intasys during the negotiations to acquire Naghshineh's company, and who claims he was told that "a deal of [that] magnitude could not get done without . . . Kott's approval." (Compl. ¶ 52).

[5] Plaintiffs allege that CS-6 was involved in negotiations to sell a company to Intasys and later actually worked for Intasys himself. (Compl. ¶ 52).

2

CS-1 also stated that he was told by Michael Tinmouth, then director of finance for Intasys, that Kott "could 'guarantee [that Intasys'] stock price . . . would be somewhere around $6'" per share. (Compl. ¶ 53). In addition, "CS-3," a former Intasys employee who worked in the Montreal office, met Kott when he visitied Goldman. (Compl. ¶ 55). "CS-5," another former employee, stated that Kott visited Intasys' offices "a number of times." (Compl. ¶ 56). "CS-4," a former director of Intasys, also met Kott. (Compl. ¶ 55).[6]

On January 11, 2005, the *Globe and Mail* reported that "SEC probes Mamma.[C]om over . . . Kott; Seeking information on possible links to stock promoter with history of legal woes . . ." (Compl. ¶ 108). The article stated that Mamma.[C]om had requested "current and former management and directors . . . to disclose any contact they might have had with" Kott or his family members. (Id.) On February 16, 2005, Mamma.Com announced that PricewaterhouseCoopers ("PWC") had refused to serve as independent auditor for 2004 and might disavow previous audit reports if the allegations regarding Kott's involvement were substantiated. (Compl. ¶ 111). That same day, Mamma.Com announced that the board had "initiated an investigation" under the auspices of a special committee made up of independent directors, outside counsel and forensic accountants to determine whether "an individual and persons acting jointly or in concert with him may have had a controlling influence on the Company in the past as a result of undisclosed shareholdings. . ." (Compl. ¶ 112). On April 12, 2005, the SEC's probe into control of Mamma.Com was upgraded to a "'formal investigation.'" (Compl. ¶ 114).

B. **Misrepresentations and Omissions**

Plaintiffs allege that defendants materially misrepresented Mamma.Com's management structure and financial outlook by failing to disclose Kott's involvement with the company. Mamma.Com's Form 20-F for 2003, filed with the SEC on May 27, 2004, stated that "the Company is not directly or indirectly owned or controlled by

---

[6] Plaintiffs further allege that a June 29, 2004 private placement of Mamma.Com stock (that involved various off-shore companies) was similar in structure to a 1993 deal through which Kott surreptitiously obtained control of an independent corporation. (Compl. ¶ 57). The 1993 deal resulted in Kott pleading guilty to securities-related charges in 2004. (Compl. ¶¶ 45-46).

another corporation(s) . . . or by any other natural or legal person(s). . ." (Compl. ¶ 82).[7] A code of ethics accompanied the Form 20-F. The code represented that the company would comply with all applicable legal and regulatory standards and that directors would monitor compliance with those standards. (Id.)

In addition, plaintiffs cite numerous SEC filings and press releases issued between March 2004 and February 2005 that they allege mislead investors by failing to disclose Kott's involvement with Mamma.Com. For example, on April 6, 2004, Mamma.Com issued a press release announcing that the SEC had initiated an informal inquiry into "intense" trading activity in the company. (Compl. ¶ 67). In the press release, Goldman stated that the company was "confident that all information and disclosures are fully compliant with all . . . SEC and other regulatory disclosure requirements" and that the "[c]ompany [was] not aware of any non-public information that might bear upon the recent activity in the market. . ." (Compl. ¶ 68).[8] In addition, in connection with its Form 6-K filed on July 8, 2004, Mamma.Com filed a Securities Purchase Agreement relating to a private placement of common stock. (Compl. ¶ 93). The Purchase Agreement represented that all SEC reports filed within the preceding two years were accurate and complete and that the company was not "in violation of any statute, rule or regulation of any governmental authority. . ." (Id.)

In response to the January 11, 2005 *Globe and Mail* article that disclosed the possibility of Kott's involvement with Mamma.Com, the company issued a press release. (Compl. ¶ 109). The press release, dated January 13, 2005, stated that Mamma.Com "has cooperated completely with the SEC's informal inquiry" and that the company's "current directors and officers have performed their duties responsibly and consistent with all applicable laws." (Id.)

---

[7] The Form 20-F was signed by Bertrand. Bertrand and Fauré also signed an accompanying Sarbanes-Oxley certification. Goldman signed an Article of Amendment attached to the Form 20-F. (Compl. ¶ 82).
[8] In a Form 6-K signed by Bertrand and filed on May 17, 2004, defendants stated that the company was cooperating fully with the SEC's inquiry. (Compl. ¶¶ 77-78). Bertrand and Fauré also signed a certification of accuracy that accompanied the Form 6-K. (Compl. ¶ 77). Also, in a Form F-3 filed on July 30, 2004, defendants stated that "management believes it has cooperated fully with all of the SEC's requests . . . . [and that] "we believe our activities have complied with" applicable securities laws. (Compl. ¶ 96).

4

## II. DISCUSSION

When ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe all factual allegations in the complaint in favor of the non-moving party. See Krimstock v. Kelly, 306 F.3d 40, 47 - 48 (2d Cir. 2002). The Court's consideration is normally limited to facts alleged in the complaint, documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken. See Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991). A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). When a complaint alleges fraud, "Rule 9(b) requires that allegations of fraud be pleaded with particularity." Harsco Corp. v. Segui, 91 F.3d 337, 347 (2d Cir. 1996). This means that the complaint "must (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent. Id.

"To state a cause of action under section 10(b) [of the Exchange Act] and Rule 10b-5 [of the Securities and Exchange Commission], a plaintiff must plead that the defendant made a false statement or omitted a material fact [in connection with the purchase or sale of securities], with scienter, and that plaintiff's reliance on defendant's action caused plaintiff injury." Kalnit v. Eichler, 264 F.3d 131, 138 (2d Cir. 2000) (internal quotation omitted). "The requisite state of mind, or scienter, in an action under section 10(b) and Rule 10b-5[] that the plaintiff must allege is an intent to deceive, manipulate or defraud." Id. (internal quotation omitted). The Private Securities Litigation Reform Act of 1995 ("PSLRA") imposed heightened pleading requirements for securities fraud actions. Id. The PSLRA provides that:

> In any private action . . . in which the plaintiff may recover
> money damages only on proof that the defendant acted with
> a particular state of mind, the complaint shall, with respect
> to each act or omission alleged to violate this chapter, state
> with particularity facts giving rise to a strong inference that
> the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(2).

To establish fraudulent intent, a plaintiff may either allege facts showing "that defendants had both motive and opportunity to commit fraud" or allege "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Kalnit, 264 F.3d at 138 (internal quotation omitted). A plaintiff may establish the requisite strong inference of scienter by alleging that the defendants: "(1) benefited in a concrete and personal way from the purported fraud . . .; (2) engaged in deliberately illegal behavior . . .; (3) knew facts or had access to information suggesting that their public statements were not accurate . . .; or (4) failed to check information they had a duty to monitor." Novak v. Kasaks, 216 F.3d 300, 311 (2d Cir. 2000).

Defendants contend that the plaintiffs have failed to adequately allege particularity, scienter and loss causation. Defendants also argue that plaintiffs' section 20(a) claims fail to pass muster.

### A. Particularity

Defendants argue that plaintiffs have failed to allege fraud with adequate particularity because: 1) plaintiffs fail to allege how much of an ownership interest Kott had in Mamma.Com or how Kott exercised control over the company; 2) plaintiffs rely on reports from sources that predate the class period; and 3) the statements and sources upon which plaintiffs rely are "vague and unreliable."

Plaintiffs have sufficiently identified "'each statement alleged to have been misleading [and] the reasons . . . why the statement is misleading. . .'" In re Health Mgmt Systems, Inc., 97 Civ. 1865, 1998 WL 283286, *2 (S.D.N.Y. June 1, 1998) (Baer, J.) (quoting 15 U.S.C. § 78u-4(b)(1)). Plaintiffs allege that Kott owned or controlled Mamma.Com and that the defendants failed to disclose that fact to the investing public. It is not necessary for plaintiffs to allege an exact percentage of interest that Kott held in the company, nor the precise manner by which Kott exercised his allegedly "secret" control. Indeed, to demand that level of specificity in this case would amount to a requirement that plaintiffs possess ultimate proof of their claims before filing suit.

Nor is plaintiffs' reliance on reports and sources that predate the class period fatally deficient. The statements in the complaint relate to Kott's alleged control over

Intasys, which changed its name to Mamma.Com less than two months before the beginning of the class period. It is reasonable to allege that Kott's control over Intasys extended to Intasys' successor corporation.

Defendants argue that the allegations of Kott's control are inherently unreliable because some of the individuals quoted in the <u>Dow Jones</u> article were disgruntled former employees. Defendants also argue that the statements recounted in the complaint are "based on multiple levels of hearsay" and are too vague to support plaintiffs' core claim regarding Kott's involvement in Mamma.Com. While on occasion less is more, and indeed certain statements plaintiffs attribute to their "investigative sources" are unduly vague, (<u>see</u>, <u>e.g.</u>, compl. ¶ 54 (citing an unidentified source as stating that "an old guy" owned all of Intasys' stock)), there is adequate support for plaintiffs' allegations. (<u>See</u>, <u>e.g.</u>, Compl. ¶¶ 49-50 (citing press reports that quoted an identified executive as stating that Kott lead the negotiations on behalf of Intasys to acquire an outside corporation); ¶¶ 51-52 (citing confidential sources with whom Kott negotiated on behalf of Intasys)). Put another way, the press reports and confidential sources cited in the complaint are sufficiently specific to support plaintiffs' claim that Kott exerted control over Mamma.Com during the class period.[9]

### B. Scienter

As set forth above, plaintiffs "must allege facts that give rise to a strong inference of fraudulent intent." <u>Novak</u>, 216 F.3d at 307. "The requisite strong inference of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." <u>Id.</u> (internal quotation omitted). "Motive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged. Opportunity would

---

[9] My decision in <u>In re Health Mgmt. Systems, Inc.</u>, upon which defendants rely, is not to the contrary. Plaintiffs therein relied heavily on allegations plead "upon information and belief," without specifically identifying the source(s) of those allegations. <u>In re Health Mgmt. Systems, Inc.</u>, 1998 WL 283286, * 3 (stating that the complaint did not "indicate what publicly available [information] plaintiffs relied on"). Here, plaintiffs have alleged in detail the sources of their allegations. Furthermore, in <u>Health Mgmt.</u>, plaintiffs alleged that defendants had failed to disclose their company's "financial difficulties," without adequately explaining the nature of those alleged difficulties. <u>Id.</u> at *4. Here, however, plaintiffs have clearly identified the fact that defendants allegedly concealed, i.e., Kott's involvement with Mamma.Com.

7

entail the means and likely prospect of achieving concrete benefits by the means alleged." Shields v. CityTrust Bancorp, Inc., 25 F.3d 1124, 1130 (2d Cir. 1994). Motive requires specific allegations that indicate "that defendants benefited in some concrete and personal way from the purported fraud." Novak, 216 F.3d at 307-08.

To state a claim based on recklessness, plaintiffs can either "specifically allege[] defendant[s'] knowledge of facts or access to information contradicting [defendant's] public statements[,]" or allege that defendants "failed to check information they had a duty to monitor." Id. at 308, 311. Generally, [w]here plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." Id. at 309. See also In re Health Management Systems, Inc. Securities Litig., 97 Civ. 1865, 1998 WL 283286, *6 (S.D.N.Y. June 1, 1998) (Baer, J.) ("courts have routinely rejected . . . attempt[s] to plead scienter based on allegations that because of defendants' board membership and/or their executive managerial positions, they had access to information concerning the company's adverse financial outlook").

Goldman was the chairman of the board of directors of Mamma.Com "at all relevant times." (Compl. ¶ 19). Fauré was the president and CEO, and Bertand was the CFO and executive vice president. (Compl. ¶¶ 20-21). Plaintiffs allege that each was "intimately involved in the day-to-day operations of Mamma.Com." (Compl. ¶¶ 27). Confidential source CS-3, a former Mamma.Com employee, alleges that he met Kott when "Kott was visiting" Goldman. (Compl. ¶ 55).[10] Bertrand signed Mamma.Com's Form 20-F for fiscal year 2003, which stated that "[t]o the knowledge of the Company, the Company is not directly or indirectly owned or controlled . . . by any other natural or legal person[s]." (Compl. ¶ 82). Both Bertrand and Fauré signed a cerification of accuracy that accompanied the Form 20-F. (Compl. ¶ 86). That certification represented that, based on the certifier's knowledge, the Form 20-F contained no untrue statements or

---

[10] Defendants argue that the confidential sources cited in the complaint are "too vaguely described to be credible." (Def.'s Mem. at 23 n.10). CS-3 is described as a "product marketing specialist who worked for years in Mamma.Com's Montreal office (through 2004). . ." (Compl. ¶ 31(e)). That description is adequate to support the statements attributed to CS-3. See Novak, 216 F.3d at 314 (anonymous sources must be "described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged").

8

material omissions. (Id.)[11] In the company's April 6, 2004 press release announcing the SEC's informal investigation into "recent trading activity[,]" Goldman stated that "[t]he Company is not aware of any non-public information that might bear upon the recent activity in the market for the Company's common stock." (Compl. ¶ 68).

Defendants argue that plaintiffs have failed to allege recklessness on the part of any of the individual defendants because none of these senior executives can be presumed to know who owned or controlled Mamma.Com. While defendants are correct that senior officers of public companies cannot always be presumed to know the identities of beneficial shareholders, here plaintiffs have alleged that Kott exercised significant operational control over the affairs of the company. Plaintiffs assert that Kott actually took part in negotiating acquisitions on behalf Mamma.Com. Thus, plaintiffs allege that Kott was more than a silent partner.

Plaintiffs may posit the requisite inference of fraud by alleging that defendants "failed to check information they had a duty to monitor." Novak, 216 F.3d at 311. Here, Bertrand explicitly represented that Mamma.Com was not controlled by any undisclosed individuals, and Fauré certified the accuracy of Bertrand's statements. Goldman allegedly met Kott, and reassured investors after the SEC initiated its inquiry that the company had not withheld any material information. While senior officers do not, solely by virtue of their positions, always have access to information indicative of fraud, plaintiffs allege here that Kott personally controlled the company's affairs. Goldman, Bertrand and Fauré surely had a "duty to monitor" who was actually running the company that they purportedly managed. Therefore, plaintiffs' allegations are sufficient to plead scienter.[12]

## C. Loss Causation

To plead loss causation, plaintiffs must allege that defendants' "misrepresentation or omission concealed something from the market that, when disclosed, negatively

---

[11] Plaintiffs also allege that Goldman signed an article of amendment that accompanied the Form 20-F, but do not describe the contents of that amendment. (Compl. ¶ 81).

[12] Plaintiffs also assert that the individual defendants had motive to commit fraud based on their personal sales of significant amounts of Mamma.Com stock during the class period. However, because I have determined that plaintiffs have raised an adequate inference of recklessness, I need not address plaintiffs' remaining allegations of scienter.

9

affected the value of the security." Lentell v. Merrill Lynch & Co., Inc., 396 F.3d 161, 173 (2d Cir. 2005). An allegation that plaintiff purchased securities at an artificially inflated price does not suffice. Rather, plaintiffs must provide "some indication" of the causal connection between defendants' alleged misrepresentations and plaintiffs' loss. See Dura Pharmaceuticals, Inc. v. Broudo, 125 S. Ct. 1627, 1634 (2005). See also In re Public Offering Sec. Litig., MDL No. 1554, 2005 WL 1529659, * 6 (S.D.N.Y. June 28, 2005) ("Where the alleged misstatement conceals a condition or event which then occurs and causes the plaintiff's loss, it is the materialization of the undisclosed condition or event that causes the loss.").

"Loss causation is a fact-based inquiry. . ." Lentell, 396 F.3d at 174. Therefore, whether "the loss was caused by an intervening event, like a general fall in the price of [i]nternet stocks . . . is a matter of proof at trial and not to be decided on a . . . motion to dismiss." Id. (internal quotation omitted). Nonetheless, allegations of loss causation are insufficient when they do not plead "facts which, if proven, would show that [plaintiffs'] loss was caused by the alleged misstatements as opposed to intervening events." Id. (internal quotation omitted).

Defendants argue that plaintiffs have not adequately alleged loss causation because: 1) plaintiffs cannot allege that defendants' material omissions caused the "spike" in share price at the beginning of the class period; and 2) plaintiffs cannot allege that the February 16, 2005 disclosure regarding Kott's potential involvement in Mamma.Com had any corrective effect on the share price.

The class period begins on March 2, 2004. (Compl. ¶ 1). The previous day, Mamma.Com issued a press release announcing its earnings for fiscal year 2003. (Compl. ¶ 59; Declaration of Barry H. Berke ("Berke Dec."), Ex. 4). On the strength of that positive earnings report, the stock "skyrocketed" on March 2nd, rising 149% from $4.05 to close at $10.10. (Compl. ¶ 60). Afterward, the stock continued to rise, ultimately reaching a class period high of $17.49 in April 2004. (Compl. ¶ 6). Thereafter, the stock began to decline, reaching $6.22 by the end of 2004 and $5.15 by January 10, 2005. (Berke Dec., Exs. 9, 1).

On January 11, 2005 the *Globe and Mail* reported that the SEC was probing Mamma.Com over possible links to Kott. (Compl. ¶ 108; Berke Dec., Ex. 10). That day,

10

the share price dropped to $4.95. (Berke Dec., Ex.1). However, the next day, the stock rebounded to $5.27. (Id.) On January 13, 2005, Mamma.Com issued a press release stating that it was cooperating fully with the SEC and that the company's "current directors and officers have performed their duties responsibly and consistent with all applicable laws." (Compl. ¶ 109).

On February 15, 2005, the share price rose steeply, to close at $6.28. (Berke Dec., Ex. 1).[13] The next day, February 16, 2005 (the last day of the class period) Mamma.Com announced that PWC would not act as auditor for fiscal year 2004 and might withdraw previously issued audit reports based on the ongoing investigation into Kott's possible involvement with Mamma.Com. (Compl. ¶¶ 111-12; Berke Dec., Ex. 13). The press release also stated that the company had initiated an internal investigation to be conducted by independent directors, outside counsel and forensic accountants to examine the allegations that "an individual" may have had a "controlling influence" on the company "in the past" based on "undisclosed shareholdings." (Berke Dec., Ex. 13). That afternoon, trading was halted in the company's stock. (Compl. ¶ 113). When trading resumed later that day, the stock fell over 40% to $3.66. (Id.)

Defendants argue that plaintiffs cannot show that the initial price surge on March 2, 2004 was caused by the alleged concealment of Kott's links to the company, since any such concealment must have begun long before that date. Defendants are correct that the March 2nd increase in share price was clearly linked to the previous day's positive earnings report. However, to satisfy the first prong of the causation analysis, plaintiffs need only allege that defendants' material omissions caused some artificial inflation in the stock. If, as plaintiffs allege, Mamma.Com was admittedly owned and controlled by a convicted scam artist it may, at this stage of the litigation, be presumed that the stock never would have risen so dramatically, regardless of any positive earnings reports. Defendants also argue that the initial surge cannot be attributed to any misrepresentations related to Kott since the stock began to decline long before any news of Kott's possible involvement hit the market. However, "[t]he fact of gradual price decline is not inconsistent with the theory that the price was artificially inflated, since the

---

[13] Defendants note that one of the class complaints filed prior to the consolidation of this action attributed this surge to false takeover rumors. (Def.s' Mem. at 18).

misrepresentations may well have buoyed a price that would otherwise have sunk much faster . . ." DeMarco v. Robertson Stephens, Inc., 318 F. Supp. 2d 110, 124 (S.D.N.Y. 2004).

Defendants further assert that Kott's alleged involvement was "disclosed" in the January 11, 2005 *Globe and Mail* article, and that the February 16th press release contained no new material information. Since the January 11th article had no appreciable effect on the share price, defendants argue that plaintiffs cannot allege that the revelation of Kott's potential involvement in the company constituted a corrective disclosure.

The January 11th article announced that the SEC was "probing possible links" between Mamma.Com and Kott. (Berke Dec., Ex. 10). It contained statements from company representatives that Mamma.Com was complying fully with the SEC's requests. (Id.) The article also described Kott's previous brushes with securities regulators. (Id.) The February 16th press release disclosed that PWC would not be auditing Mamma.Com's 2004 financial statements and that it might withdraw its previous audit reports. (Berke Dec., Ex. 13). The release also stated that Mamma.Com had formed a special committee made up of independent directors, outside counsel and forensic accountants to investigate allegations "that an individual . . . may have had a controlling influence on the Company in the past as a result of undisclosed shareholdings." (Id.) The release explained that PWC was "not prepared to begin their audit process before the conclusion of such review[,]" and that PWC would withdraw its previous reports if either the internal investigation or the SEC investigation turned up "any issues." (Id.)

In short, the February 16th release contained several pieces of information not disclosed in the January 11th article. Specifically, the release stated that PWC was resigning as outside auditor and that a special committee had been formed to conduct an independent investigation. This information could reasonably lead investors to believe that Mamma.Com's ties to Kott were of greater significance than had been previously acknowledged. Thus, the February 16th press release can be characterized as a corrective disclosure.

Finally, defendants argue that the February 16th drop in share price is insignificant because it largely erased gains from the previous day that were attributable to false

takeover rumors.[14] However, plaintiffs need not allege that the only factor affecting the stock during the class period was the concealment and ultimate disclosure of Kott's involvement with the company. Obviously, other market forces were present as well. Plaintiffs will ultimately prevail if they can prove that defendants' alleged fraud caused some artificial inflation of the share price that later dissipated when the concealed facts were revealed. Plaintiffs have plead facts sufficient to show just that.

### D. Section 20(a)

"Controlling-person liability" under section 20 of the Exchange Act "is a separate inquiry from that of primary liability and provides an alternative basis of culpability." Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 101 (2d Cir. 2001) (internal quotation omitted). To establish controlling-person liability, a plaintiff must allege: 1) "a primary violation by the controlled person[;]" 2) "control of the primary violator by the targeted defendant[;]" and 3) "that the controlling person was in some meaningful sense a culpable participant in the fraud perpetrated by the controlled person." In re Vivendi Universal, S.A., 381 F. Supp. 2d 158, 189 (S.D.N.Y. 2003) (Baer, J.) (internal quotation omitted).[15]

Defendants argue that plaintiffs fail to allege control person liability with regard to Goldman, Bertrand or Fauré because plaintiffs have failed to allege a primary violation of the Exchange Act or culpable participation on the part of any of the individual defendants. As set forth above, plaintiffs have plead a primary violation. Furthermore, since I have already determined that plaintiffs adequately alleged that Goldman, Bertrand and Fauré acted with scienter, the "culpable participation" requirement is met.

---

[14] The stock closed at $4.62 on February 14, 2005, at $6.28 on February 15, 2005, and at $3.66 on February 16, 2005. (Berke Dec., Ex. 1; Compl. ¶ 113).

[15] There is some confusion within this Circuit regarding the content of the culpable participation requirement. See In re Deutsche Telekom A.G. Securities Litigation, 00 Civ. 9475, 2002 WL 244597, *6 (S.D.N.Y. Feb. 20. 2002) (culpable participation must be pled in accordance with the heightened pleading requirements of the PSLRA); In re Vivendi, 318 F. Supp. 2d at 190 (culpability not subject to heightened pleading requirement); Cf. In re Worldcom, Inc. Securities Litigation, 02 Civ. 3288, 2005 WL 638268, *13 (S.D.N.Y. March 21, 2005) (plaintiff need not plead scienter to allege culpable participation).

## III. CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is DENIED. The Clerk of the Court is directed to close this motion and remove it from my docket. The parties are directed to appear for a Pretrial Conference in my chambers on April 6, 2006 at 4:30 p.m. Prior to the conference, the parties shall confer with regard to a proposed pretrial scheduling order.

SO ORDERED.

March 20 2006
New York, New York

_____
U.S.D.J.